CA No. 20-99010

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEZMOND CHARLES MITCHELL,

Defendant-Appellant.

DC No. 3:01-cr-01062-DGC
(Civil No. 3:09-cv-08089-DGC

**DEATH PENALTY CASE**

**Emergency Motion Under Circuit Rule 27-3(b)**

**Execution Set For:**
**Date: August 26, 2020 at**
**Time: To Be Determined**

# APPELLANT'S COMBINED EMERGENCY MOTIONS FOR A CERTIFICATE OF APPEALABILITY AND A STAY OF EXECUTION

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

CUAUHTEMOC ORTEGA
Interim Federal Public Defender
JONATHAN C. AMINOFF
Jonathan_Aminoff@fd.org
CELESTE BACCHI
Celeste_Bacchi@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Tel: (213) 894-5374; Fax: (213) 894-0310
Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Circuit Rule 27-3(c)(i), the attorneys for the parties are:

**Counsel for Defendant-Appellant, Lezmond Mitchell**

Jonathan C. Aminoff
Celeste Bacchi
Deputy Federal Public Defenders
Office of the Federal Public Defender
321 East Second Street
Los Angeles, CA 90012
Jonathan_Aminoff@fd.org
Celeste_Bacchi@fd.org
213-894-5374

**Counsel for Plaintiff-Appellee, United States of America**

William G. Voit
Sharon Sexton
Krissa Lanham
Assistant United States Attorneys
Office of the United States Attorney
Two Renaissance Square, Suite 1200
40 N. Central Avenue
Phoenix, AZ 85004
William.Voit@usdoj.gov
602-514-7500

**Counsel for the Bureau of Prisons**

Katherine Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North,
Terre Haute, IN 47802
KSiereveld@bop.gov
812-238-3476

Appellant Lezmond Mitchell is scheduled to be executed on August 26, 2020, in violation of the United States Constitution. Circuit Rule 27-3(c)(ii).

This motion is being filed one day after the district court issued the order that is the subject of this appeal. Circuit Rule 27-3(c)(iii).

After the district court denied Mitchell's motions, Mitchell promptly filed a notice of appeal and the Court issued a scheduling order apprising the parties of all developments. Appellee's counsel will be served via the Court's appellate CM/ECF system. Circuit Rule 27-3(c)(iv).

Mitchell sought relief in the district court and now appeals the district court's adverse ruling. Circuit Rule 27-3(c)(v).

## TABLE OF CONTENTS

**Page**

CIRCUIT RULE 27-3 CERTIFICATE ........................................................ i

I. INTRODUCTION ......................................................................1

II. RELEVANT FACTS AND PROCEDURAL HISTORY ..............................1

III. ARGUMENT ...........................................................................4

A. Relevant factors for a stay of execution. ............................................4

B. Mitchell presents a substantial case for relief on the merits of his claim that the U.S. violated his human rights under the American Declaration. ........................................................5

C. Mitchell faces the greatest possible irreparable harm. ........................12

D. The balance of equities favors a stay. ................................................12

E. The public interest favors a stay. .......................................................14

F. Mitchell has not delayed in bringing his motion. ................................15

IV. CONCLUSION ........................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ....................14

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ....................10, 11

*Beaty v. Brewer*,
649 F.3d 1071 (9th Cir. 2011) ....................5

*Carneal v. Banks*,
23 U.S. (10 Wheat.) 181 (1825) ....................9

*Chew Heong v. United States*,
112 U.S. 536 (1884)....................9

*Cook v. United States*,
288 U.S. 102 (1933)....................9

*Eberle v. Anaheim*,
901 F.2d 814 (9th Cir. 1990) ....................10

*Ellingson v. Burlington Northern, Inc.*,
653 F.2d 1327 (9th Cir. 1981) ....................10

*Evans v. Bennett*,
440 U.S. 1301 (1979)....................12

*Hill v. McDonough*,
547 U.S. 573 (2006)....................5

*Kolovrat v. Oregon*,
366 U.S. 187 (1961)....................9

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ....................5

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) ....................5

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Medellin v. Texas*,
552 U.S. 491 (2008) .......... 11

*Mitchell v. United States*,
137 S. Ct. 38 (2016) .......... 3

*Mitchell v. United States*,
2010 WL 3895691 (D. Ariz. Sept. 30, 2010) .......... 2

*Mitchell v. United States (Mitchell II)*,
790 F.3d 881 (9th Cir. 2015) .......... 2

*Mitchell v. United States (Mitchell III)*,
958 F.3d 775 (2020) .......... 1, 14

*Moodie v. The Ship Phoebe Anne*,
3 U.S. (3 Dall.) 319 (1796) .......... 9

*Morse v. ServiceMaster Global Holdings, Inc.*,
2013 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 8, 2013) .......... 5, 12

*Ogbudimkpa v. Ashcroft*,
342 F.3d 207 (3d Cir. 2003) .......... 9

*Orr v. Hodgson*,
17 U.S. (4 Wheat.) 453 (1819) .......... 9

*Osorio-Martinez v. Attorney Gen. of the U.S.*,
893 F.3d 153 (3d Cir. 2018) .......... 14

*Patsone v. Pennsylvania*,
232 U.S. 138 (1914) .......... 9

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 13

*Slack v. McDaniel*,
529 U.S. 473 (2000) .......... 5

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Towery v. Brewer*,
672 F.3d 650 (9th Cir. 2012) ....................5

*United States v. Mitchell (Mitchell I)*,
502 F.3d 931 (9th Cir. 2007) ....................2

*United States v. Noriega*,
808 F. Supp. 791 (S.D. Fla. 1992) ....................8

*United States v. Rauscher*,
119 U.S. 407 (1886) ....................9

*Wainwright v. Booker*,
473 U.S. 935 (1985) ....................12

*Zepeda v. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ....................12

## Docketed Cases

*Mitchell v. U.S.*,
Ninth Circuit Case No. 18-17031 (9th Cir., July 29, 2020) ....................13

*Mitchell v. United States*,
D. Ariz. Case No. 09-CV-8089 ....................2

## Constitutional Authorities

U.S. Const. art. VI, cl. 2 ....................8

## Federal Statutes

18 U.S.C. § 3598 ....................8

28 U.S.C. § 2241 ....................2

28 U.S.C. § 2255 ....................*passim*

## TABLE OF AUTHORITIES

**Page(s)**

### Other Authorities

28 CFR 26.3(a)(1) ........................................................................................ 15

David Sloss, *When Do Treaties Create Individually Enforceable Rights? The Supreme Court Ducks the Issue in* Hamdan *and* Sanchez-Llamas, 45 COLUM. J. TRANSNAT'L L. 20, 98-99 (2006) ........................................................................................ 9

## I. INTRODUCTION

As the domestic courts have repeatedly found, something very wrong happened with this case, yet the domestic courts have been unable to find an appropriate remedy. *See, e.g.*, *Mitchell v. United States ("Mitchell III")*, 958 F.3d 775 (2020) ("Although the judiciary today has done its job, I hope that the Executive will carefully consider whether the death penalty is appropriate in this unusual case.") Unable to find redress, Mitchell sought relief in the Inter-American Commission on Human Rights ("IACHR" or "Commission"). Mitchell now seeks to enforce the Commission's determination that his conviction, sentence, and imminent execution violate his rights guaranteed by the American Declaration of the Rights and Duties of Man ("American Declaration"). A certificate of appealability ("COA") and a stay of execution would allow the Court to consider his claims before the Government executes him in contravention of the American Declaration. Because Mitchell shows a likelihood of success on the merits of his appeal (thereby meeting the threshold standard for a COA) and the balance of equities tips strongly in his favor, he respectfully requests that this Court grant him a COA and a stay of execution.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On May 20, 2003, a jury recommended that Lezmond Mitchell be sentenced to death. On September 15, 2003, the District Court of Arizona formally sentenced

Mitchell to death. The details of the trial are well known to the Court and are summarized in *United States v. Mitchell (Mitchell I)*, 502 F.3d 931, 942-946 (9th Cir. 2007) and *Mitchell v. United States (Mitchell II)*, 790 F.3d 881, 883-85 (9th Cir. 2015).

Mitchell's conviction and sentence were affirmed on direct appeal. *Mitchell I*, 502 F.3d 931. On June 8, 2009, Mitchell filed a motion under 28 U.S.C. § 2255 (or in the alternative, under 28 U.S.C. § 2241) to vacate, set aside, or correct his sentence based on numerous violations of Mitchell's constitutional rights that occurred during the guilt and penalty phases of his trial. *See Mitchell v. United States*, D. Ariz. Case No. 09-CV-8089, Dkt. 9. Among these was a claim of ineffective assistance of counsel at trial for failure to challenge jury selection. Mitchell moved the district court for authorization to interview jurors from his capital trial. The district court denied the request, and Mitchell amended his § 2255 motion to include a claim that the district court violated his constitutional rights by denying him access to jurors. The district court denied the motion on September 30, 2010, as well as the motion for an evidentiary hearing. *Mitchell v. United States*, 2010 WL 3895691 (D. Ariz. Sept. 30, 2010). Mitchell appealed, and on June 19, 2015, this Court affirmed this Court's judgment, but did not address the juror-interview issue. *Mitchell II*, 790 F.3d 881. The Supreme Court denied

Mitchell's petition for certiorari on October 3, 2016. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

Thereafter, Mitchell filed a petition with the Inter-American Commission on Human Rights, an organization formed under the auspices of the Organization of American States ("OAS"). After Mitchell's § 2255 motion was denied, on April 3, 2017, Mitchell timely filed a petition against the United States before the Commission, alleging his death sentence was imposed in violation of the American Declaration, specifically Articles I (right to life and liberty); II (right to equality before the law); III (right to religious freedom and worship); XIII (right to the benefits of culture); XVIII (right to a fair trial); XIX (right to nationality); XXV (right to have the legality of his detention ascertained without delay); and XXVI (right to due process of law). Mitchell requested the Commission issue precautionary measures against the United States, pursuant to Article 25.1 of its Rules of Procedure, to suspend his execution pending consideration of his petition by the Commission. (IACHR, Report No. 193/20. Case 13.570, Admissibility and Merits, Lezmond C. Mitchell, United States of America, August 12, 2020) ("IACHR Mitchell Report").)

On July 2, 2017, the Commission issued Resolution 21/2017 granting precautionary measures in favor of Mitchell, requesting the United States "adopt the necessary measures to preserve the life and physical integrity of Mr. Lezmond

Mitchell until the IACHR has ruled on his petition, so as not to render ineffective the processing of his case before the inter-American system," pursuant to the United States' "obligations . . . in regard to human rights as a member of the OAS." (Commission Resolution 21/2017, July 2, 2017). On September 21, 2017, the United States submitted a response to Mitchell's petition. (Petition No. P-627-17, Lezmond C. Mitchell, Response of the United States of America, Sept. 21, 2017.) Over the next three years, the parties engaged in extensive briefing regarding the admissibility and the merits of Mitchell's petition.

On July 14, 2020, the Commission issued a decision in Mitchell's case, ruling the United States had violated Mitchell's rights under Articles I, XVIII, XXV, and XXVI of the American Declaration. *See* IACHR Mitchell Report (Ex. 1.) On August 12, 2020, the Commission issued its final report. (Ex. 1.).

Mitchell's execution is scheduled for August 26, 2020.

## III. ARGUMENT

### A. Relevant factors for a stay of execution.[1]

Courts consider four factors, balanced against each other, when considering a motion for a stay of execution: (1) the likelihood of the moving party's eventual success on the merits; (2) the threat of irreparable harm to the moving party unless

[1] Mitchell establishes that he meets the COA standard within the likelihood of success on the merits section of the injunction standard. *See* section III.B.

a stay is issued; (3) the balance of hardships amongst the interested parties; and (4) the interests of the public. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7 (2008)).

This standard applies to "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "[A] stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (same).

### B. Mitchell presents a substantial case for relief on the merits of his claim that the U.S. violated his human rights under the American Declaration.

It is Mitchell's burden to establish that his appeal presents a "substantial case for relief on the merits."[2] *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). While the Ninth Circuit has not yet clearly defined that phrase, "[o]ften a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist.

[2] A COA must issue if the petitioner establishes that the issue in question is at least debatable amongst jurists of reason. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The likelihood of success standard therefore subsumes this standard, and as a result Mitchell's showing on this factor entitles him to a COA.

LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)).

Mitchell is likely to succeed in his claims that he is entitled to relief because the Commission has ruled that his conviction and death sentence violate the American Declaration, and federal courts are bound to enforce the rulings of the Commission. (*See* Ex. 1.) As Mitchell established below in his § 2255 motion, the Commission ruled that Mitchell's human rights under the American Declaration were violated, specifically: (1) the right to be free from unlawful and arbitrary arrest (Article XXV); (2) the right to a fair trial and to due process of law (Articles XVIII and XXVI); (3) the right to effective assistance of counsel (Articles XVIII and XXVI); (4) the right to effective legal remedies, i.e., effective review or appeal from a determination that the death penalty was the appropriate sentence in his case (Articles XVIII and XXVI); and (5) the right to be free from cruel, infamous, or unusual punishment (Articles XXV and XXVI). In addition, the Commission ruled that executing Mitchell in light of these violations "would be extremely grave and constitute a deliberate violation of the right to life established in Article I of the American Declaration. (Ex. 1 at 26.)

Mitchell is likely to succeed on the merits because he already succeeded on the merits of these claims before the Commission, and the Commission's ruling is binding on federal courts. The United States is a member of the OAS, whose

charter the U.S. ratified in 1951. 2. U.S.T. 2349, T.I.A.S. No. 2361, 119 U.N.T.S. 3. The Inter-American system of human rights was first put in place with the adoption of the OAS Charter and the American Declaration in 1947, at a conference where the U.S. Government was an active participant. *See* 119 U.N.T.S. 3, 2 U.S.T. 2394, T.I.A.S. No. 2361, OEA/Ser.L.V/II.82 doc.6 rev.1 at 17 (1992). The United States signed and ratified without reservation amendments to the OAS Charter that made the Commission a principal organ through which the OAS accomplishes its purposes, including the protection of human rights. 721 U.N.T.S. 324, 21 U.S.T. 607, T.I.A.S. No. 6847.

Relying heavily on out-of-circuit caselaw, the district court found that the OAS Charter was not self-executing because Congress has not enacted statutes implementing the Charter within the United States. (Dkt. 8 at 7.) The district court acknowledged that the OAS Charter specifically authorizes the Commission to act as a judicial body, but held that the member states are not required to abide by the Commission's decisions.

However, the Commission's Report found that Mitchell's human rights were violated, and those findings are binding on the United States because: (1) they are derived directly from the OAS Charter, a treaty within the meaning of the U.S. Constitution, and (2) they are derived, through the OAS Charter, from the American Declaration, a statement of human rights norms the United States has not

only adopted, but helped to draft. The Supremacy Clause of the Constitution binds courts to enforce treaties. U.S. Const. art. VI, cl. 2. This Court is thus bound to enforce the terms of the OAS treaty, whether or not the treaty is self-executing. *See, e.g.*, *United States v. Noriega*, 808 F. Supp. 791, 799 (S.D. Fla. 1992) (holding that the United States is obligated to observe the provisions of the Geneva Convention regardless of whether the treaty was self-executing). The Commission is a tribunal expressly established under the OAS Charter to promote and protect human rights and its ruling on the application of human rights principles in Mitchell's case must be considered authoritative. For these reasons, and because Mitchell's constitutional rights were violated, the district court was obligated to follow the Commission's recommendation that Mitchell be granted a new trial and/or sentencing, in accordance with domestic and international law, as well as the express wishes of the Navajo Nation, which exercised its federally recognized "tribal option" not to authorize the Government to seek the death penalty against Mitchell. *See* 18 U.S.C. § 3598. The OAS Charter is therefore sufficiently self-executing for domestic courts to abide by Commission findings. The Ninth Circuit has yet to evaluate this argument and should not be deprived of the opportunity to do so.

Mitchell made several arguments in district court that the Charter is self-executing, but even if it is not, the Charter still has effect. (Dkt. 7 at 9-10.) It is

well established that habeas has historically been available to enforce rights under treaties that do not themselves create private rights of actions. *See, e.g.*, *Chew Heong v. United States*, 112 U.S. 536 (1884) (granting habeas relief to a Chinese laborer based on an 1880 treaty between the United States and China where the treaty did not create a private right of action); *see also* David Sloss, *When Do Treaties Create Individually Enforceable Rights? The Supreme Court Ducks the Issue in* Hamdan *and* Sanchez-Llamas, 45 COLUM. J. TRANSNAT'L L. 20, 98-99 (2006) (discussing *Chew Heong*). *See generally Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 217-20 & n.22 (3d Cir. 2003) (discussing the availability of habeas corpus to enforce rights conferred by non-self-executing treaties in light of implementing legislation). Further, the weight of the Supreme Court's precedents suggests that claims by petitioners in habeas cases can be analogized to claims by defendants in other civil—and even criminal—lawsuits. *See, e.g.*, *United States v. Rauscher*, 119 U.S. 407 (1886). In those contexts, treaties that do not create a private right of action have nevertheless been available as a substantive defense. *See, e.g.*, *Kolovrat v. Oregon*, 366 U.S. 187 (1961); *Cook v. United States*, 288 U.S. 102 (1933); *Patsone v. Pennsylvania*, 232 U.S. 138 (1914); *Carneal v. Banks*, 23 U.S. (10 Wheat.) 181 (1825); *Orr v. Hodgson*, 17 U.S. (4 Wheat.) 453 (1819); *Moodie v. The Ship Phoebe Anne*, 3 U.S. (3 Dall.) 319 (1796); *see also* Amicus Brief of Law Professors Louis Henkin et al. at 9-13, *Hamdan*, 126 S. Ct. 2749 (No.

05-184) (discussing the significance of these cases). *See generally* Sloss, *supra*, at 51-91 (exhaustively tracing the history of cases in which the Supreme Court considered the enforceability of treaties). Indeed, Mitchell established that throughout American history, habeas has been available to petitioners under treaties even where those treaties do not carry a private right of action. Thus, unless a non-self-executing treaty is not a "treaty" for purposes of the Supremacy Clause—a proposition without any support in the case law—habeas otherwise remains available as a remedy to petitioners alleging violations of their treaty-based rights.[3]

If the Court does not find that Mitchell has established a likelihood of success on the merits, this finding is not fatal to Mitchell's entitlement to a stay. Mitchell may alternatively demonstrate that "serious questions going to the merits" of his claims are presented in his appeal, and obtain a stay as long as the other factors weigh in his favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

[3] The district court declined to address several of Mitchell's arguments regarding the question of whether the Charter is self-executing because Mitchell raised them in his reply. (Dkt. 8 at 6 n.3.) But because these arguments were raised in response to arguments that the Government raised in its Answer, they should not be considered waived. *See Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). The Government was not misled about the argument, *id.*, and the issue was fully explored. *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1322 (9th Cir. 1981).

1135 (9th Cir. 2011). Mitchell's motion, at minimum, raises substantial questions about whether Mitchell's rights under the American Declaration and the U.S. Constitution and federal law were violated, and whether federal courts, unlike state courts,[4] are bound to enforce the judgment of the Commission finding that his rights were in fact violated. Because the balance of hardships tilts strongly in his favor, a stay of execution is appropriate. *Id.* at 1131-32.

Finally, even if the Court finds that Mitchell has not demonstrated a likelihood of success on the merits, nor that he has demonstrated "serious questions going to the merits" of his claims, this Court should grant Mitchell's motion for a COA and to stay his execution. The Ninth Circuit has not yet ruled on the impact of an IACHR decision on a federal capital case, and this Court should give the Ninth Circuit the opportunity to do so by issuing the stay, and allowing litigation on this important issue to go forward. Indeed, decisions from this Circuit are noticeably absent from the district court's judgment. This case "is one that raises genuine matters of first impression within the Ninth Circuit," and Mitchell is

[4] In his section 2255 motion, Mitchell relied on *Medellin v. Texas*, 552 U.S. 491 (2008), wherein the petitioner challenged his convictions and sentence stemming from a state-court judgment. There, the Supreme Court's decision was limited to deciding whether IACHR opinions are mandatory for purposes of state convictions and sentences. *Id*. at 522-23. The district court, however, adopts a much more general reading of *Medellin*. (Dkt. 8 at 7 n.4.) This divergence of views is certainly debatable and counsels in favor of granting a COA.

therefore entitled to a stay. *Morse*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton*, 916 F.2d at 1412).

### C. Mitchell faces the greatest possible irreparable harm.

Absent a stay, Mitchell could be executed before he can pursue this litigation seeking redress for violations of his rights under the American Declaration. The harm could not be greater or more irreparable. *See, e.g.*, *Wainwright v. Booker*, 473 U.S. 935, n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"). The Commission has already determined that Mitchell's human rights were violated pursuant to a treaty that is binding on the United States, in a judgment this Court is bound to enforce.

### D. The balance of equities favors a stay.

In contrast, the Government will not be irreparably harmed if Mitchell's execution is stayed. While the Government in opposing stays of execution often claims an interest in the enforcement of criminal judgments, here that interest depends on whether the Government's noticed execution even constitutes a valid enforcement of the judgment and sentence entered by this Court. The Government cannot suffer harm from an order that merely restrains an unlawful action. *Zepeda*

*v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

Wasted preparation efforts are inadequate to demonstrate irreparable harm to the Government. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough.")). Moreover, the Government could mitigate any potential financial harm by promptly stopping any preparations for Mitchell's execution.

Nor does the Government have any persuasive argument that delaying Mitchell's execution for the period of this litigation undermines its interest in the timely enforcement of capital punishment. The Government has stated that "a scheduled federal execution date cannot readily be moved in light of BOP contractor availability and other complex logistical consideration." *Mitchell v. U.S.*, No. 18-17031 (9th Cir., July 29, 2020), Dkt. 47. In support of this statement, it cited an application filed in the Supreme Court, which states that if the execution in question were delayed, it could not be rescheduled for at least *one* month. *Id.* (citing *Barr v. Lee*, No. 20A8, 2020 WL 3964985 (July 14, 2020)). In contrast, prior to this year, the Government had not executed a federal prisoner since 2003,

and the Government itself suspended executions from 2011 until 2019. The Government's years-long delay in generating any execution protocols dwarfs its expected delay in rescheduling, and undermines any purported claim of urgency. *Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018) ("the fact that the Government has not—until now—sought to" act "undermines any urgency" to do so now).

Whatever urgency may exist, it was manufactured by the Government when it chose to set an execution date with just 28 days' notice at a time when the Ninth Circuit's stay order was still in effect. "That the government's asserted harm is largely self-inflicted 'severely undermines' its claim for equitable relief." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quoting *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993)).

### E. The public interest favors a stay.

"The decision to seek the death penalty in Mitchell's case was made against the express wishes of the Navajo Nation, [and] several members of the victims' family," who are members of the Navajo Nation. *Mitchell III*, 958 F.3d at 793 (Christen, J., concurring). Navajo "culture and religion teaches us to value life and instruct against the taking of human life for vengeance." *Id.* It certainly upholds no interest of the victims' family or the Navajo Nation to carry out Mitchell's

execution before ensuring that it proceeds in a manner prescribed by law and the Court's judgment.

The public at large also has an interest in making sure that the United States honors its treaty obligations, and that courts enforce decisions ruling that a person's human rights have been violated pursuant to that treaty. This interest is all the more weighty when it implicates the most solemn act the Government can undertake—killing a person.

For all of these reasons, the public interest favors a stay to permit consideration of Mitchell's motion.

**F. Mitchell has not delayed in bringing his motion.**

On July 29, 2020, the Government provided Mitchell notice of its intent to execute him pursuant to 28 CFR 26.3(a)(1). On August 12, 2020, the Commission issued its final report in Mitchell's case, giving rise to the claims asserted in his concurrently filed § 2255 motion. Mitchell filed his motion eight days later on August 20, 2020. Thus, Mitchell has acted promptly to prevent the Government from executing him in contravention of his human rights, as determined by an international body whose authority the United States is bound to respect through its treaty obligations. He has not waited until the eve of execution, and the proximity of his motion and execution date are not caused by any delay on Mitchell's part.

## IV. CONCLUSION

Because Mitchell presents, at least, a serious question on the merits of his claims and the balance of equities tilts sharply in his favor, this Court should grant a stay of execution until the resolution of his motion. In addition, the Court should grant a COA.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 22, 2020

By: */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHELL