**C.A. No. 20-99010**

D. Ct. No. CV-20-08217-PCT-DGC

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

LEZMOND CHARLES MITCHELL,

Movant-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

---

**RESPONSE TO COMBINED EMERGENCY MOTION FOR A CERTIFICATE OF APPEALABILITY AND A STAY OF EXECUTION**

---

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Attorneys for Appellee

Date Submitted via ECF: August 23, 2020

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Less than a week before his scheduled execution, Mitchell now seeks a certificate of appealability (COA), and another stay of his execution, based on an extraordinary claim that has been rejected by every court to consider it. On his view, a defendant whose conviction and sentence have been found free of cognizable statutory or constitutional error after direct and collateral review is then entitled to force the prosecution to start over entirely, on the theory that it did not separately comply with treaty-based procedures that the defendant never asked the courts to follow. Indeed, his view is that he can seek such a do-over *only* after all of the resources are expended on the prosecution, direct review, and collateral attack, and that the United States has ceded to an international body the power to direct federal courts to grant such a do-over. Section 2255 does not allow for such belated claims after two full rounds of federal review, and no jurist of reason has or would accept such a claim on the merits.

Mitchell's motion for a stay should also be denied. As the Supreme Court explained, "[l]ast-minute stays . . . should be the extreme exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)). No extreme exception is warranted here because Mitchell has failed to satisfy the standard for a stay.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. In October 2001, Mitchell and an accomplice (Johnny Orsinger) carried out a plan to carjack a truck in New Mexico for use in the armed robbery of a trading post in Arizona. During the carjacking, the two men brutally murdered and dismembered a nine-year-old girl (identified in court documents as Jane Doe) and her 63-year-old grandmother, Alyce Slim.

After Slim agreed to give Mitchell and Orsinger a ride, they stabbed her 33 times. They then drove Slim's truck 40 miles, with Jane Doe sitting next to her grandmother's mutilated corpse. Mitchell stopped in an isolated spot, forced Jane Doe out of the truck, and ordered her to "lay down and die." Mitchell cut her throat twice. As Doe lay on the ground bleeding, Mitchell and Orsinger used rocks to bludgeon her head until she died. Mitchell and Orsinger then decapitated their victims and cut off their hands, burying the severed body parts. Mitchell and others proceeded to commit the planned armed robbery using Slim's truck. Mitchell confessed to the murders, led Navajo police officers to Slim and Jane Doe's bodies, and had a knife with Slim's blood on it when he was arrested.

B. Mitchell was convicted of numerous federal crimes, including two counts of first-degree murder and one count of carjacking resulting in death, for which he was sentenced to death. On direct appeal, Mitchell raised many claims, including challenges to the imposition of the death penalty over the Navajo Nation's

objections, *United States v. Mitchell*, 502 F.3d 931, 946-49 (9th Cir. 2007); to his arrest, questioning, and detention, *id*. at 959-63; and to the constitutionality of execution by lethal injection, which Mitchell argued constituted cruel and unusual punishment, *id*. at 983-84. This Court rejected Mitchell's claims and affirmed his convictions and capital sentence. *Id.* at 942-97. The Supreme Court denied a petition for certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

Mitchell subsequently filed a first motion under 28 U.S.C. § 2255. Among other claims, Mitchell asserted that he had received ineffective assistance of trial counsel and challenged the district court's denial of an evidentiary hearing on that claim. *Mitchell v. United States*, 790 F.3d 881, 886-94 (9th Cir. 2015). The district court denied relief, this Court affirmed, *id.* at 883-894, and the Supreme Court denied certiorari, 137 S. Ct. 38 (2016).

In 2018, Mitchell filed a motion under Federal Rule of Civil Procedure 60(b)(6) to reopen his § 2255 proceedings. The district court denied the motion, and this Court again affirmed. *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020). Mitchell's certiorari petition and accompanying application for a stay of execution are currently pending in the Supreme Court.

C. On August 20, 2020—six days before his scheduled execution—Mitchell filed a new motion under 28 U.S.C. § 2255, seeking vacatur of his convictions and sentence. (CR 1.) Mitchell's motion rested on an IACHR report

opining that his capital sentence violates his asserted rights under the Charter of the Organization of American States (OAS Charter) and the American Declaration of the Rights and Duties of Man (American Declaration). (CR 1 at 38-66.) Mitchell argued that the IACHR report's "recommendations" require that U.S. courts now grant him relief from his conviction and sentence because the United States ratified the OAS Charter, which in turn created the IACHR. (CR 1 at 17-18.) Although he recognized that the American Declaration is non-binding, he argued that the human-rights norms it describes become enforceable when the IACHR applies them in a specific case. (CR 1 at 18-22.) The government opposed the motion procedurally, as an impermissible second-or-successive § 2255 motion, and substantively. (CR 5.)

The district court denied Mitchell's motion on the merits. (CR 11.) Noting that Mitchell's "fairly radical" argument meant the United States would have "surrendered the power of its courts to the IACHR," Judge Campbell found that Mitchell "ha[d] not come close to showing that decisions of the IACHR are binding in U.S. courts" and denied a COA. (CR 11 at 11.)

## III. ARGUMENT

Mitchell's motion for a stay, and his request for a COA, should be denied. To obtain a stay of execution, Mitchell "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and

(4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citation omitted). Mitchell has not satisfied those prerequisites.

Mitchell also has not satisfied the standard for a COA. To obtain a COA, Mitchell must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He thus must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Although he need not prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.* at 338 (internal quotations omitted). He cannot do so.

### A. Because Mitchell's Claims Rest On The Asserted Denial Of Treaty Rights, And Not A Constitutional Right, They Are Not The Proper Subject Of A COA

As an initial matter, Mitchell has not satisfied the threshold statutory requirements for a COA because he has not made "a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2) (emphasis added). In enacting that threshold requirement, Congress narrowed the prior judge-made standard, which required "'a substantial showing of the denial of a *federal* right,'" to apply only to constitutional claims. *Slack*, 529 U.S. at 480, 483 (emphasis added; citations omitted). A COA thus may not issue to review a claimed denial of a right

derived from another source of law, such as a statute or treaty. *See United States v. Mikels*, 236 F.3d 550, 551 (9th Cir. 2000) (no COA for statutory claim); *Murphy v. Netherland*, 116 F.3d 97, 99-100 (4th Cir. 1997) (no COA for treaty claim).

Mitchell does not raise a constitutional claim here. He argues that "his conviction and death sentence violate the American Declaration," the IACHR recommendations found that his "human rights under the American Declaration were violated" (Mot. 6), and requests a COA to allow him to "enforce" the IACHR's recommendations (Mot. 1.) Mitchell does not attempt to establish that his claim involves the denial of a constitutional right, invoking his "constitutional rights" only in passing without identifying any specific rights to which he is referring.[1] (Mot. 2, 8, 11.) Because Mitchell thus claims denial of asserted treaty rights, not any constitutional right, no COA may issue. *See Mikels*, 236 F.3d at 551.

Mitchell cannot circumvent the requirement that he make a substantial showing of a denial of a "constitutional right," 28 U.S.C. § 2253(c)(2), by characterizing his treaty claim as a violation of the Constitution's Supremacy Clause. Although the district court appeared to accept that framing (*see* CR 11, at 5), the "Supremacy Clause is not the 'source of any federal rights.'" *Armstrong v.*

[1] To the extent that Mitchell intends those passing references to reassert constitutional claims he raised in previous litigation, those claims would be improper second-or-successive § 2255 claims. *See* 28 U.S.C. § 2255(h); *cf. Gonzalez v. Crosby*, 545 U.S. 524 (2005).

*Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989)). Instead, it simply "secure[s] federal rights by according them priority whenever they come into conflict with state law." *Golden State Transit Corp.*, 493 U.S. at 107. The Supreme Court has therefore repeatedly refused to allow litigants to constitutionalize their claims by invoking the Supremacy Clause. *See Armstrong*, 575 U.S. at 324; *see, e.g., Golden State Transit Corp.*, 493 U.S. at 107 & n.4 (Supremacy Clause does not create "right secured by the Constitution" under 42 U.S.C. § 1983); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 614-15 (1979) (Supremacy Clause does not create "right secured by the Constitution" under 28 U.S.C. § 1343). As those decisions make clear, "the Supremacy Clause does not convert violations of treaty provisions . . . into violations of *constitutional* rights." *Murphy*, 116 F.3d at 100. "Just as a state does not violate a constitutional right by violating a federal statute, it does not violate a constitutional right merely by violating a treaty." *Id.* The same principle applies here, and precludes issuance of a COA. *See* 28 U.S.C. § 2253(c)(2).

### B. Even If Mitchell Were Raising A Constitutional Claim, He Would Not Be Entitled To A COA

Even assuming that Mitchell's treaty-based claim were eligible for a COA, the district court correctly denied one, and this Court should do the same. First, as the district court recognized, no reasonable jurist would disagree with its rejection

of his claim on the merits. Second, and independently, Mitchell's claim was not properly raised in that court.

**1. Reasonable Jurists Could Not Disagree That IACHR Recommendations Are Not Binding On Federal Courts**

Even assuming away Mitchell's threshold procedural and jurisdictional obstacles, Mitchell has not met his burden to show that reasonable jurists could disagree with the district court's resolution of his claims.

Mitchell asserts that the IACHR's recommendations are "binding on federal courts" because the recommendations are (1) "derived directly from the OAS Charter, a treaty within the meaning of the U.S. Constitution," and (2) "derived, through the OAS Charter, from the American Declaration." (Mot. 6-7.) Based on that logic, Mitchell claims that the district court was "obligated to follow the [IACHR's] recommendation that Mitchell be granted a new trial and/or sentencing." (Mot. 6, 8.) But he points to nothing anywhere in the relevant treaties and instruments that makes the IACHR's recommendations binding on federal courts. And every circuit court to have considered the question, even in passing, has recognized that IACHR recommendations are not binding on federal courts. *See Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016); *Flores-Nova v. Attorney Gen. of U.S.*, 652 F.3d 488, 493 (3d Cir. 2011); *In re Hicks*, 375 F.3d 1237, 1241 n.2 (11th Cir. 2004); *Garza v. Lappin*, 253 F.3d 918, 925 (7th Cir. 2001); *Roach v. Aiken*, 781 F.2d 379, 381 (4th Cir. 1986)).

Treaties "may comprise international commitments," but they "are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be self-executing and is ratified on these terms." *Medellín v. Texas*, 552 U.S. 491, 505 (2008) (citation omitted). The treaty at issue in this case is the OAS Charter, which provided for the creation of the IACHR. OAS Charter (Amended) Art. 106, 21 U.S.T. 607. The United States originally ratified the Charter in 1951, and ratified it again as amended in 1958. *Garza*, 253 F.3d at 924. But because Congress has not enacted statutes implementing the OAS Charter within the United States, the Charter creates law binding in federal courts only if it is self-executing and was ratified on those terms.[2] *Medellín*, 552 U.S. at 505. (*See* CR 11 at 7.) As the district court and other courts of appeals have correctly recognized, it is not. (CR 11 at 7-9.)

As the Supreme Court made clear in *Medellín*, a treaty's mere grant of adjudicatory authority to an international body (here, the IACHR) does not impose a self-executing obligation on members states to comply with its decisions. 552 U.S. at 507-08. Instead, a clearer statement of members states' obligations is required before a treaty will be deemed self-executing. *Id.* at 508. And as other courts have

[2] Mitchell thus errs in relying (Mot. 9) on *Ogbudimpka v. Ashcroft*, 342 F.3d 207, 217-20 (3d Cir. 2003), which concerned the Convention Against Torture, one article of which Congress had implemented by enacting legislation.

found, the OAS Charter contains no such language. *See Flores-Nova*, 652 F.3d at 493; *Garza*, 253 F.3d at 925. [3]

The district court also correctly rejected Mitchell's contention that the IACHR's recommendations bind federal courts because they are derived from the American Declaration. The American Declaration "is not a treaty" but instead a "noble statement of the human rights aspirations of the American States [that] creates no binding set of obligations." *Flores-Nova*, 652 F.3d at 495; *see also Igartua v. United States*, 626 F.3d 592, 603 n.11 (1st Cir. 2010); *Garza*, 253 F.3d at 923. Moreover, under the IACHR's governing statute, the IACHR acts only "in an advisory role with respect to the United States" by making "recommendations for human rights improvements." (CR 11 at 10.) *See Garza*, 253 F.3d at 925. As the district court observed, consistent with this role, the IACHR report on which Mitchell relies characterizes its findings as "recommendations." (CR 1, Ex. 1 at 26; CR 11 at 10.)

Mitchell alternatively argues that U.S. courts are bound to enforce the terms of the OAS Charter even if the Charter is not self-executing. (Mot. 8.) Because Mitchell raised that argument for the first time in his reply brief, the district court

[3] Mitchell appears to have abandoned his claim that IACHR recommendations are binding because the Commission has been empowered to hear individual complaints. (CR 1 at 21.) That claim was, in any event, meritless for the reasons described in Judge Campbell's order. (CR 11 at 7.)

declined to consider it. (CR 11 at 6 n.4.) In any event, no reasonable jurist could agree with that position because it conflicts with the Supreme Court's decision in *Medellín*. *See* 552 U.S. at 504-05, 510; *see also Flores-Nova*, 652 F.3d at 494 n.6.

The consistent and uniform rejection of claims like Mitchell's, *see* p. 8, *supra*, confirms that the merits of such a claim are not reasonably debatable. The Fifth Circuit has accordingly twice denied COAs to capital defendants who presented arguments about IACHR recommendations that are substantively identical to Mitchell's. *See Tamayo v. Stephens*, 740 F.3d 991, 997 (5th Cir. 2014); *Cardenas*, 820 F.3d at 203. This Court should do the same, and likewise deny a stay on a claim as to which Mitchell cannot show any likelihood of success.

**2. Mitchell's Motion Is an Unauthorized Second or Successive Motion Under Section 2255**

While the lack of debatable merit alone would justify the denial of a COA (assuming one could issue), a COA should also be denied for the independent reason that Mitchell's motion is barred as an unauthorized second or successive § 2255 petition.

a. Section 2255, which governs the general process under which a federal prisoner may obtain collateral review of the legality of his conviction or sentence, generally limits collateral attacks to a single motion asserting any ground eligible for collateral relief. *See* 28 U.S.C. § 2255(a); *see Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). Section 2255(h) forecloses successive § 2255 motions, except

as authorized by a court of appeals in cases involving either: (1) persuasive new evidence that the prisoner was factually not guilty of the offense, or (2) a new rule of constitutional law made retroactive to final convictions by the Supreme Court. 28 U.S.C. § 2255(h)(1) and (2).

Mitchell asserted no treaty-based claim in the § 2255 motion that he filed in 2009 (or at any other time in this litigation), and his new § 2255 motion makes no attempt to satisfy either of § 2255(h)'s gatekeeping provisions. Mitchell has instead claimed, and the district court accepted, that his motion is not second or successive, on the theory that his claim "was not ripe" until the Commission issued its final report. (CR 11 at 5; CR 7 at 5.) But as this Court has held, a § 2255 motion filed after an earlier § 2255 motion is "second or successive" if it raises a claim based on a factual predicate that existed at the time of the earlier motion, even if that factual predicate was not (and could not have been) discovered until later. *See United States v. Buenrostro*, 638 F.3d 720, 726 (9th Cir. 2011). Here, both the instruments on which Mitchell relies and the procedures and result to which Mitchell objects existed at the time of his initial § 2255 motion, but until three days ago, he never gave any federal court—either during the trial or thereafter—the opportunity to consider whether his criminal prosecution had to accord with those documents. Treaty rights, like constitutional rights, are subject to principles of procedural default. *See Breard v. Greene*, 523 U.S. 371, 375-376 (1998) (per curiam).

Mitchell's efforts to transform his *concession* that the OAS Charter and American Declaration do not themselves create binding or enforceable individual rights (CR 1 at 19) into an *affirmative justification* for a late-breaking and successive collateral attack are misplaced. On Mitchell's view, a defendant can fail ever to mention treaty rights in his trial proceedings, direct appeal, or collateral review, then later seek a form of "international" collateral review that would allow for a new collateral attack on a conviction and sentence that have already received two full rounds of review. Nothing in § 2255 permits such a claim, and the district court erred in relying on *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007), to conclude otherwise.

*Panetti* held that a state prisoner's claim of incompetency to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986), was not categorically foreclosed by the bar on "second or successive" habeas petitions by state prisoners. *See Panetti*, 551 U.S. at 942-48. The equitable, purposive, and historical considerations that informed the Court's conclusion in that "unusual posture," *id.* at 945, have no analogue here. Mitchell identifies no historical practice analogous to the sort of post hoc international collateral review that he seeks here, in which a non-U.S. tribunal could review claims based on the same facts and procedures that federal courts have already twice considered, and then require U.S. courts to grant relief. If Congress intended such a scheme—which would wholly undermine the streamlined review

that § 2255 requires—it would have said so expressly.

b. Nor could Mitchell mount such a renewed collateral attack in the court below by alternatively styling his filing as a habeas petition under 28 U.S.C. § 2241. Under 28 U.S.C. § 2255(e), a federal prisoner is precluded from filing a habeas petition unless § 2255's remedy "is inadequate or ineffective to test the legality of" the claims. 28 U.S.C. § 2255(e). But the § 2255 remedy "is not 'inadequate or ineffective' merely because § 2255's gatekeeping provisions prevent the petitioner from filing a second or successive petition."[4] *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003). And this Court has held that a prisoner can establish jurisdiction under § 2241 only where he *both* "(1) makes a claim of actual innocence"—which Mitchell has not done—"and (2) has not had an unobstructed procedural shot at presenting that claim"—which Mitchell had. *Stephens*, 464 F.3d at 898; *Muth v. Fondren*, 676 F.3d 815, 818 (9th Cir. 2012). An after-the-fact set of "recommendations" from an international tribunal does not excuse Mitchell from never asserting any treaty rights in the prior 17 years of federal litigation.

In any event, the proper venue for a habeas petition under § 2241 is not the court of conviction, but instead the district court for the district where the defendant

[4] Although this Court's precedent would itself foreclose relief here, the government preserves its position that the Tenth and Eleventh Circuits' narrower interpretation of § 2255(e) is correct. *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1079 (11th Cir. 2017); *Prost v. Anderson*, 636 F.3d 578, 590-92 (10th Cir. 2011) (Gorsuch, J.).

is incarcerated. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000); *see* 28 U.S.C. § 2241(a). Here, that would be the Southern District of Indiana. The Seventh Circuit held in *Garza*, *supra*, that a claim like Mitchell's is cognizable under § 2241. But *Garza* also indicates that the Seventh Circuit would reject Mitchell's claim on the merits, for the reasons discussed above. 953 F.3d at 924-26; *see* Part B.1, *supra*. Accordingly, no reason exists to excuse any improper venue and allow a COA here.

### C. Mitchell Is Not Entitled To A Stay

Just as his claim does not warrant a COA, it does not warrant a last-minute stay of his execution. First and foremost, for the reasons set forth above, Mitchell has not shown that he is likely to succeed on the merits of his § 2255 claims. And Mitchell has additionally failed to show that the balance of equities or the public interest favors a stay. This Court recently denied a stay based on a late-breaking challenge to the lethal-injection protocol, *see United States v. Mitchell*, --- F.3d ----, 2020 WL 4815961 (9th Cir. Aug. 19, 2020), and it should do the same here.

The balance of equities weighs strongly against Mitchell's last-minute request for delay. "[A] stay of execution is an equitable remedy," and the Court must "apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quotation omitted).

The Supreme Court has criticized suits that are "dilatory" or that seek to employ "[r]epetitive or piecemeal litigation" to delay capital sentences. *Id*. at 584-85.

Here, Mitchell could have attempted to bring claims based on the IACHR's views earlier. As Mitchell acknowledges (Mot. 4), the IACHR issued recommendations in his case on July 14, 2020, concluding that the United States had violated Mitchell's asserted rights under the American Declaration. And although the IACHR did not issue its final report until August 12, 2020, that report itself contains only recommendations and is no more binding than the IACHR's earlier recommendations. Mitchell thus could have raised his current § 2255 claims at least a month ago (if not years earlier), but instead failed to bring them until after other claims were denied. He should not obtain last-minute relief simply because he has chosen to serialize his claims.

Mitchell has been afforded more than 15 years of direct appeal and collateral review, all finding no error. This case is well past the point at which "a presumption of finality and legality attaches to the conviction and sentence." *Autry v. Estelle*, 464 U.S. 1, 3 (1983) (quotation omitted). "Equity must take into consideration the State's strong interest in proceeding with its judgment." *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992). And "without finality, the criminal law is deprived of much of its deterrent effect." *Calderon v. Thompson*, 523 U.S. 538, 554 (1998) (quotation marks omitted).

Further weighing against Mitchell is the "'powerful and legitimate interest in punishing" him for his heinous crime, an interest "shared by the State and crime victims alike." *Calderon*, 523 U.S. at 555-56 (quotation omitted). As in any capital case, relatives of the victims have a range of opinions, but numerous family members have long supported a capital sentence. Indeed, a relative of Jane Doe has already made plans to travel to Terre Haute next week to observe Mitchell's execution. Furthermore, granting a stay at this stage would cause "severe prejudice" to the government, *In re Blodgett*, 502 U.S. 236, 239 (1992) (per curiam), which is fully prepared to implement a lawful sentence imposed many years ago. As the government has recently explained to the Supreme Court, a scheduled federal execution date cannot readily be moved in light of complex logistical considerations. *See* Gov't Appl. at 37-38, *Barr v. Lee*, No. 20A8 (filed July 13, 2020). At this late stage, Mitchell should not be permitted to frustrate the government's efforts to carry out his execution.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Combined Emergency Motions for a Certificate of Appealability and a Stay of Execution should be denied.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant U.S. Attorney

## VI. CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant U.S. Attorney